Biegert v. Molitor This is an appeal from the granting a summary judgment with respect to the qualified immunity issue and involves Officer Dunn and Krieger of the Green Bay Police Department. The authority for this is the authority of Brown v. Blanchard, Escobedo v. Bender, Palmquest, and Abdullah v. City of Madison. The basis of this is that when the police officers, who were dealing with a mentally ill man, who was dealing with a man who was completely compliant, went and sat on the couch, waited for a protective sweep, waited as the officers walked towards the kitchen, was never asked any questions. This event happened in less than four minutes. They immediately grabbed him, and after that, a scuffle ensued. They hit him, they kicked him, and at that moment, they had talked with Mr. Biegert. They said, how many pills did you take? And he said, three. And they looked at three bottles on the floor and saw some pills there. Then they attempted wrongfully, in our view, under 5115, to take him into custody without explaining, without talking slowly, without finding out what the problem was from his perspective. The concept of special rules that would require a reasonable police officer has been around, Judge, excuse me, since 1987 with the crisis intervention. Mr. Stern, I'm sure you're aware that this circuit in King v. Hendricks County has dealt very recently with a similar case in which a mentally disturbed person attacked police with a knife. Is there any way in which this situation can be distinguished from the one in King? I can only say, Judge, that in this particular case, they immediately grabbed him without any explanation whatsoever, and the fact that he hadn't committed a crime or anything within the presence of the officer that indicated any aggression or lack of cooperation. Counsel, you're just restating your argument. I'm asking about King and about the relation between this case and King. And I'm trying to distinguish that, Judge, maybe not to the court's satisfaction, but I do believe that in this case, as opposed to King, we have essentially an officer pouncing on an innocent citizen. You're not saying anything about King. The holding in that case was that police were entitled to use deadly force when a mentally disturbed person approached them holding a knife. As I understand what's happened here, the knife was actually used against a police officer. It seems very hard to distinguish a case saying deadly force may be used in response to a threat with a knife from a case in which the knife was used. Excuse me. I'm sorry, Judge. In the Brown v. Blanchard, it says, quote, an officer who shoots a suspect in efforts to protect themselves cannot accept liability if the danger he faced was created by his own unreasonable conduct. This has been accepted by the Seventh Circuit. This has been accepted, Judge Adelman, when he gave a very detailed counsel. That particular contention was expressly rejected by the Supreme Court of the United States and, in any event, has nothing to do with my question about King. I would point to the court that the Seventh Circuit has accepted that view about excessive force leading to a problem. I understand King. I tried to distinguish it. Maybe the court will find there is no distinguishing. I don't want to be dishonest. I would say, also, that in Palm Quest and Abdullah, we have a situation where Officer Kruger shot Joseph Dekers three times. He was down on the ground and completely unable to resist. Then another group of shots were fired for Officer Dunn. That is similar to Palm Quest v. Silvix and Abdullah v. City of Madison. Dealing with the standards for one of the decisions of the trial judge was that local regulations cannot be the standard. I agree with that. The Supreme Court accepts that in the Braun v. Blanchard case, the court looked at the crisis management guide to determine the reasonableness. Even in the Supreme Court case of White v. Pauley, the court clearly pointed out that some of these rules can be objective rules to clearly establish or require the officer to use less force. It will take me just a second to find it. In De Piazza v. City of Milwaukee, the Western District, expert witnesses are often used to evaluate the rules and regulations and determine the question of what a reasonable police officer would do that would make a certain action or inaction clearly established. And I yield the rest of my time. Certainly, counsel. Mr. Gunter. Thank you, Your Honor. May it please the court. My name is Greg Gunter, and I have the privilege of appearing before you today on behalf of City of Green Bay police officers, Molitor, Kruger, and Dunn. They respectfully request the court affirm the district court's decision, granting them summary judgment and dismissing plaintiff appellant's claims in their entirety. It is clear from a review of the cases, both of the United States Supreme Court and of this district court of appeals, that there are two categories of cases that come into play where officers have been called to a scene where they're dealing with a mentally ill and suicidal individual and are eventually shot by those officers and killed. The case law is very clear in the first category, as well as the second category, the first category being situations where the actions of the office were found to be reasonable under the Fourth Amendment. And that is the Supreme Court case, the United States Supreme Court case of Sheehan, the Seventh Circuit case of King v. Hendricks, Seventh Circuit case of Williams v. Indiana State Police. In those particular types of cases in this category, officers being called to these scenes to render aid encountered violent reactions from the individuals they were dealing with, necessitating the use of deadly force. In this case, I think it's important, Your Honors, to know that not even the plaintiff appellants disagree that when the shots were fired by Dunn and Krieger, that they weren't necessitated by the actions of Mr. Biggert. Also, in this first category of cases, officers generally used force options that were available to them to get the individual under control. The cases are clear that those force options were used in Williams. Yes? I'm sorry, did someone have a question? All right, I'll continue. Those force options were used with the final deadly force being used as a last resort. And the second category of cases, and I think it's very clear, are the Brown v. Blatcher and the Wyman v. McClone type cases. And in those type of cases, which are completely different than the facts in our Biggert case from this perspective, both individuals in those cases, although being suicidal, were passive. In Wyman, the suicidal person was sitting passively in a chair with a gun across his lap when officers shot and killed him. And clearly, under the current status of the law, that was unreasonable. In Brown, the officers kicked in the door to where Brown was sitting, saw Brown with a knife, and at that point, Officer Blanchard shot and killed Brown. That, again, was a situation where less than lethal force options were not utilized, and the officers went immediately to the deadly force. Those are clearly the cases that have been dealt with and establish what criteria we have to judge the deadly force used by Dunn and Krieger in their dealing with Mr. Biggert. There are other issues that were raised by plaintiff appellants in their brief, and one of them is that the violations of police regulations and policies somehow have some effect on the analysis of the Fourth Amendment use of force. And this circuit in Scott v. Edinburgh made it perfectly clear that whether officers' conduct were either good police practices or violations of Illinois law was immaterial to the Fourth Amendment. I would like to correct one thing with all due respect that Mr. Stern said earlier. Really, this is not an issue of qualified immunity. As stated in the opinion of the lower court, the qualified immunity issue did not have to be reached due to the analysis and decision based upon the Fourth Amendment. So I think the law is fairly clear in this area. I think it was clear in 2015, and it was again made perfectly clear in King v. Hendricks in March of 2020. Unless there are any questions from the court, I have nothing further. Thank you very much, Mr. Gunther. Mr. Naparala, you have about two and a half minutes. Thank you, Your Honors. In rebuttal to what has been raised, there are significant factual differences between these cases and really all of the cases cited by both the court and counsel. In this particular case, the court should look to the sequence of events and the facts from beginning up until the use of deadly force, and you will find that this is not like the other cases and the other holdings. The main contention we have is that Mr. Biegert, who was called for a welfare check, was as passive as can be and was not at the time armed when the encounter began. As the court will note from the record, he was sitting in his own apartment without the knife on his presence and without any sort of aggression shown towards anyone or anything. As we proceed through the sequence of events, and I think this is a clear difference from all of the other cases, he was passive, controlled, responsive, non-confrontational, all the way through until the officers began to physically hurt him, in which case he became, as they say, passively resistant, and then they began to inflict pain and escalate from there. Our contention is that a reasonable jury can infer that the officers' actions throughout the course of the detention and search were, in fact, so unreasonable that they were violative of even a very low standard. If you piece this out – and we're not asking a court or a jury to go back with 20-20 hindsight over everything these officers did, but rather to note that they pretty much – and this is a bit hyperbolic – they didn't do what they should have done right from the start until the fatal encounter happened. He didn't resist, and he was passive, and the entire detention all the way through was so bad that we believe that a reasonable jury could certainly hold for the plaintiff. And we're asking the court to remand and allow these facts to be brought to the fore. Thank you, and with that, we'll rest on our brief. Thank you very much, counsel. The case is taken under advisory.